WILKINS DODGE, INC., Appellant,

v.

CHRYSLER CORPORATION, a.k.a.
Chrysler Motors Corporation,
Respondent.

No. C1–88–39.

Court of Appeals of Minnesota.

July 5, 1988.

Review Denied Sept. 16, 1988.

Samuel D. Heins, Martin D. Munic, Minneapolis, for appellant.

Duane W. Krohnke, Mark D. Savin, Minneapolis, for respondent.

Louis W. Claeson, Jr., James W. Schutjer, Minnesota Auto. Dealership Ass'n, amicus curiae St. Paul.

Heard, considered and decided by CRIPPEN, P.J., and SCHUMACHER and MULALLY,* JJ.

---

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. In July 1987, based on an exemption existing in the 1986 version of section 80E.14, the trial court rejected Wilkins' original claim. Under legislation effective at that time, a manufacturer proposing to move a dealership was exempt from the statute's restrictions if the proposed relocation site was within the dealership's "area of responsibility" as defined in the franchise

## OPINION

CRIPPEN, Presiding Judge.

Wilkins Dodge, Inc. (Wilkins), a new car and truck dealership, appeals a trial court decision rejecting its challenge under Minn. Stat. § 80E.14 (Supp.1987), to Chrysler Corporation's proposed relocation of another dealership from Minneapolis to Roseville. The trial court permitted the relocation, finding that Chrysler demonstrated good cause under the statutory factors. Wilkins claims that two of the trial court's findings of fact are clearly erroneous such that the decision should be reversed, and that the case should be remanded for further findings. We affirm.

## FACTS

Appellant, Wilkins, has operated a new car dealership at 1013 University Avenue in St. Paul since 1969. Chrysler Corporation franchises Wilkins as well as the City Dodge dealership located on East Lake Street in Minneapolis. In October 1986, facing continuing losses at the Lake Street location, Chrysler decided to relocate City Dodge. The proposed location was near the intersection of County Road C and Interstate 35W in Roseville, which is a strong and growing market for new car sales and is 5.23 miles from Wilkins. On November 12, 1986, Chrysler gave the statutory notice required under Minn.Stat. § 80E.14 (1986) for a proposed relocation.

On November 24, 1986, Wilkins commenced an action to try to prevent the move. Minn.Stat. § 80E.14 prohibits a manufacturer from relocating a dealership within ten miles of an existing dealership of the same make unless Chrysler meets its burden of establishing good cause for the relocation.[1]

agreement, and the proposed relocation site was not within 5 miles of existing dealerships of the same line make of new vehicles. *See* Minn. Stat. § 80E.14, subd. 1 (1986). The exemption was confined by the 1987 Minnesota legislature to moves within a 5 mile radius of the relocating dealership, which excludes the Roseville site. *See* Minn. Stat. § 80E.14, subd. 1 (Supp. 1987). On August 6, 1987, after the effective date of the amendment, Wilkins reinstated an

After considering the statutory factors, the court found that the relocation would have insignificant adverse effects on Wilkins' new car sales. The court discussed a number of other factors favoring permission for the relocation, and concluded that Chysler met its burden of establishing good cause. The court concluded that any adverse effects on Wilkins' sales can be offset by Wilkins' aggressive marketing and will be outweighed by the benefits to the consuming public.

## ISSUES

1. Did the trial court err in its findings of adverse consequences for appellant connected with Chrysler's proposed relocation?

2. Did the findings sufficiently demonstrate application of the appropriate statutory standards?

## ANALYSIS

■ In determining whether a manufacturer has met its burden of establishing good cause for a relocation, Minn.Stat. § 80E.14, subd. 2, identifies nine factors the court must consider. The factors deal with, among other things, the positive and negative effects on consumers and the adverse consequences on other dealerships of relocating a dealership.[2]

We note initially respondent's argument that five of the nine factors are worded in terms of "new" dealerships, and need not be considered for relocation proposals. We disagree. It is evident the legislature has identified nine factors which it intended to have considered on the issue of good cause "for entering into *or* relocating an additional franchise for the same line make." Minn.Stat. § 80E.14, subd. 2 (Supp.1987) (emphasis added).

In its briefing, appellant has narrowly limited the scope of this review. From 38 trial court findings on various facts in the case, appellant's challenges are confined to findings among those regarding adverse effects of the proposed relocation on appellant's business. Appellant suggests that correction of these findings would require a different result. Alternatively, appellant asks for a remand for additional findings.

Minn. Stat. § 80E.14, subd. 2(i) deals with the effects of relocation on the stability of other Dodge franchises in the market area surrounding appellant's University Avenue franchise. The record identifies only the question as to adverse effects on appellant with respect to this standard, although it indicates there are other Dodge dealers in the area.

Although the trial court found the proposed relocation may have an adverse ef-

action. The trial court in this case concluded that Chrysler is not exempt from the good cause requirements of the statute.

2. (a) The extent, nature, and permanency of the investment of the proposed new dealership and the existing motor vehicle dealer in the relevant market area;
  (b) The effect on the retail new motor vehicle business and the consuming public in the relevant market area;
  (c) Whether it is injurious to existing new motor vehicle dealers in the relevant market area and the public welfare for an additional new motor vehicle dealership to be established;
  (d) Whether the new motor vehicle dealers of the same line make in that relevant market area are providing adequate competition and convenient consumer care for the motor vehicles of the line make in the market area including the adequacy of motor vehicle sales and service facilities, equipment, supply of motor vehicle parts, and qualified service personnel;
  (e) Whether the new motor vehicle dealers of the same line make in the relevant market area are providing adequate market penetration and representation; provided, that good cause shall not be shown solely by a desire for further market penetration;
  (f) Whether the establishment of an additional new motor vehicle dealership would increase competition, and therefore be in the public interest;
  (g) The growth or decline in population and new car registrations in the relevant market area;
  (h) The effect the proposed new dealership would have on the provision of stable, adequate, and reliable sales and service to purchasers of the same line make in the relevant market area;
  (i) The effect the proposed new dealership would have on the stability of existing franchises of the same line make in the relevant market area.
Minn. Stat. § 80E.14, subd. 2 (Supp.1987).

fect on Wilkins' retail sales, the court also found, among other findings:

(1) Chrysler correctly believes that the relocation would not have significant adverse effects on other Dodge dealers;

(2) relocation might have "some adverse effect on Wilkins' new car sales," but that this would "not be significant in terms of Wilkins' total sales and future prospects for total sales;"

(3) Wilkins has not substantially penetrated the Dodge market in the Roseville area;

(4) the Wilkins dealership is situated in an active automobile sales location;

(5) the primary thrust of Wilkins' sales is south and west of the University Avenue location, and Wilkins will have a chance to expand its trade in part of its Minneapolis trade area which would no longer overlap into City Dodge's area;

(6) the overlap of Wilkins' and City Dodge's relevant market areas will be no greater upon relocation than it is at the present time;

(7) that overlap of two dealerships' relevant market areas is the rule rather than the exception; and

(8) that either intra-brand or inter-brand competition with Wilkins from the Roseville site is anticipated regardless of whether the proposed relocation is permitted, because the site is available to any "interested and financially responsible motor vehicle dealer."

In its memorandum the court reflected on its findings and the record as a whole and concluded that any adverse effects would be offset by Wilkins' effective sales techniques.

### I.

Appellant's briefs question the trial court findings regarding Wilkins' sales in the Roseville area and its prospect for getting any business from an area once served by the City Dodge dealership in Minneapolis. Wilkins contends the trial court drastically underestimated the harm it would suffer as a result of the relocation, and that the court clearly erred in two underlying factual findings: that the lost sales opportunity in Wilkins' relevant market area is insignificant, and that Wilkins will gain substantial sales in Minneapolis if City Dodge relocates.

Trial court findings of fact must be affirmed unless clearly erroneous. Minn.R. Civ.P. 52.01.

■ a. Wilkins contends that it has nearly completely penetrated its market area and that a diversion of sales to City Dodge in Roseville will be seriously detrimental to its business. It disputes the trial court's view that it has not substantially penetrated the Roseville area with Dodge sales.

Wilkins acknowledges that respondent has offered evidence that sales in the immediate relevant market area are 624 sales less than industry standards. Wilkins contends, however, that this evidence is bogus, because of its proof that Wilkins' market penetration within a ten mile radius of its St. Paul business nearly equals the industry standard for an area that size. Wilkins adds that it is the larger area surrounding its own business that must be considered.

This argument goes beyond its challenge on the weight of the evidence; rather, it suggests that so long as it shows adequate penetration of its smaller relevant market area, this information governs as a matter of law in determining whether it will be hurt by a new franchise in the relevant market area. Wilkins' analysis is not borne out by examination of the controlling statute.

■ Minn. Stat. § 80E.14, subd. 2(e) requires consideration of Wilkins' penetration of the ten mile market area surrounding its business. That consideration, however, does not render insignificant specific evidence of market potential in a smaller segment of its trade area. The fact that a dealership has insubstantial sales in that area and that the potential for sales is considerable is directly relevant to the question of whether it will be harmed by

the proposed relocation. Chrysler's evidence was legally pertinent and supportive of the trial court finding that Wilkins' penetration in the relevant market area left room for a new dealership without substantial harm done to Wilkins.

■ b. Wilkins contends the trial court finding that it will have available a greater opportunity for sales in the market area abandoned by City Dodge is also clearly erroneous. In support of that finding the court cited the fact that a greater concentration of sales by Wilkins appears to exist in the area immediately south and west of its dealership, which includes the Lake Street area in Minneapolis; and that a relocated City Dodge will be further removed from portions of that market area than the Wilkins dealership.

Chrysler's expert testified that removing City Dodge's sales influence from Lake Street leaves Wilkins with an expectation of generating 17.4 percent of its business in the Lake Street trading zone. Currently Wilkins sells 54 units in that zone. Of the total current Dodge sales of 579 cars and trucks in the Lake Street trading zone, only 53 would go to a relocated City Dodge according to the expert's model. Applying the 17.4 percent rate to the remaining available sales, Wilkins would increase its sales to 92 units, or 38 more unit sales.

Thus, there is significant evidence to support the trial court findings. We conclude the trial court has not clearly erred in either of the findings challenged by Wilkins.

## II.

■ Appellant's next contention is that the trial court failed to consider all nine of the required statutory findings, specifically factors (b), (e), (h) and (i). The trial court need not make specific findings on each of the statutory factors, nor specifically address each factor. *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 83, 249 N.W.2d 168, 172 (1976) ("It is sufficient if the findings as a whole reflect that the trial court has taken the statutory factors into consideration, in so far as they are relevant, in reaching its decision."). The trial court's findings were complete and detailed.

Appellant contends the trial court made no findings on the effect of relocation on the business of selling and on buyers in the key area, and whether relocation helps or hurts potential Dodge buyers' interest in quality sales and service in the area. *See* Minn. Stat. § 80E.14, subd. 2(b), (h). To the contrary, the court found that the Roseville location is a desirable outlet with room for competition; that the only alternative to relocation, closing of City Dodge, would hurt consumers throughout the Twin Cities; that the relocation would create more selection for consumer buyers; that the relocation would result in an improved facility in City Dodge's relevant market area, so that the part of Wilkins' area which is in the former City Dodge area would be better served; that there is a market to be served in the Roseville area because market penetration is somewhat below zone average; and that the benefits to consumers would outweigh harm to Wilkins.

Appellant argues the trial court failed to address the concerns of factor (i), the effect the proposed relocation would have on the stability of existing Dodge dealers in the relevant market area. Specifically, appellant asserts the trial court neglected to consider the extent of harm to Wilkins. The court's findings on this subject are detailed earlier in this opinion. The court made numerous findings relating specifically to the adverse impact the relocation would have on Wilkins.

As to factor (e), Wilkins' inadequate penetration, the court found its penetration rate in the immediate relevant market area to be somewhat less than zone average. Appellant correctly observes that the trial court did not recite market penetration information based on the entire district. The information on that topic was undisputed. There is no reason to think the trial court ignored the factor notwithstanding the absence of a recitation of a finding regarding that information.

### DECISION

The court's findings on the statutory factors establishing good cause were detailed and complete. The findings were supported by sufficient relevant evidence on the record.

Affirmed.